IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

JAMES ROBERT TURNER and
JOHN TOWNSEND,

                                          OPINION AND ORDER

                Plaintiffs,

                                          12-cv-179-bbc

    v.

GRARY HAMBLIN, JANEL NICKEL, WILLIAM
GROSSHANS, MORGAN DON, ROLAND
COUEY, FRANSON BRAIN, MIESNER
MICHAEL, TONY ASHWORTH, TIM
PETERSON, SANDY HAUTAMAKI, CHARLES
COLE, JOANNE LANE, TIM DOUMA,
KIELSLING DIANA, BRETT SUTTON, ZEIGLER

                Defendants.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

      In this proposed civil action for monetary and injunctive relief, plaintiffs James Robert Turner and John Townsend contend that the living conditions at the Columbia Correctional Institution violate their right to be free from cruel and unusual punishment under the Eighth Amendment and that they were subject to racial discrimination.  Plaintiffs have styled their complaint as a putative class action for all current and future prisoners at the Columbia Correctional Institution.  They have also filed a motion for appointment of counsel.  Dkt. #4.

      Plaintiffs have filed a petition for leave to proceed <u>in forma pauperis</u> and have made initial partial payments.  Because plaintiffs are prisoners, I must screen their complaint and

1

dismiss it if it is legally frivolous, malicious, fails to state a claim upon which relief may be granted or asks for money damages from a defendant who by law cannot be sued for money damages. 28 U.S.C. § 1915A. In performing that screening, the court must construe the complaint liberally. Haines v. Kerner, 404 U.S. 519, 521 (1972).

After reviewing the complaint, I conclude that plaintiffs must be denied leave to proceed and their complaint must be dismissed for failure to state a claim. Because I am dismissing plaintiffs' complaint, I cannot determine at this time whether the issues will be so complex that they will exceed plaintiffs' abilities to prosecute it, so I will deny the motion for appointment of counsel at this time.

In their complaint, plaintiffs allege the following facts.

ALLEGATIONS OF FACT

Plaintiffs James Robert Turner and John Townsend are prisoners confined at the Columbia Correctional Institution, located in Portage, Wisconsin.

Several defendants are officers of the State of Wisconsin Department of Corrections. Defendant Grary Hamblin is the secretary, defendant Charles Cole is the deputy secretary, defendant Tim Peterson is the director of the state bureau of correctional enterprises, defendant William Grosshans is the administrator of the division of adult institutions and defendant Roland Couey is the director of facilities management.

The remaining defendants are managers and employees at the Columbia Correctional Institution. Defendant Michael Meisner is the warden, defendant Tim Douma is the

assistant warden and defendant Janel Nickel is the security director.  Defendant Don Morgan is the manager of DS-1 and DS-2.  Defendants Zeigler, Tony Ashworth, Brain Franson, and Sandy Hautamkai are unit managers, responsible respectively for units 1 and 2, units 4 and 5, units 6 and 7, and units 8 and 9.  Defendant Joanne Lane is a complaint examiner.  Defendant Diana Kiesling is the program coordinator.  Defendant Brett Sutton is the laundry supervisor.

The Columbia Correctional Institution is a maximum security prison constructed in 1986 and designed to house 480 inmates.  Since 1986, the institution has consistently held more than 693 inmates and now houses more than 869.

Because of the overcrowding, inmates at the Columbia Correctional Institution are now "double-celled" on all housing units.  The prison puts two prisoners in cells designed for one, placing the second inmate's bed on the cell floor.  Two prisoners share a cell with 400 cubic feet of space.  Newly arriving prisoners at the Columbia Correctional Institution are placed in double cells randomly, without any attempt at classifying for dangerousness.  Prisoners are placed in double cells even though they have "a propensity for violence [and] emotional instability . . . or [a] past encounter with a designated cell partner."  Id. at ¶ 85.  Plaintiffs allege that "prisoners have been sexually assaulted or beaten when paired with prisoners the defendants knew, or should have known to have a history of such assault."  Id. at ¶ 82.  Inmates who refuse to be placed in a double cell are given a disciplinary report and placed in the adjustment segregation center.

The adjustment segregation center at Columbia Correctional Institution houses

approximately 45 inmates. Plaintiff Turner was placed in segregation Ds-1 on November 16, 2011. The beds in the cells of Ds-1 consist of a mattress placed on a concrete bed frame. The frames have insects (perhaps ants or sand mites) living inside them. Plaintiff wrote a "memorandum" to defendants Miesner, Douma, Morgan and Nickel on November 22, 2011 and to sergeant Millonig on November 23, 2011, complaining about the conditions in his cell. When Millonig came to speak with plaintiff about the insects on December 5, 2011, plaintiff showed him 20-25 of the insects that he had collected. Millonig stated that he believed the insects were sand mites and would put in a work order. No work was done before plaintiff was moved to a different cell in Ds-2 on December 28, 2011.

Both Ds-1 and Ds-2 have six outdoor "cages" for exercise, but the prison has no indoor recreation area to use for days with bad weather. The cages have no apparatus bar for pull ups or dips. Inmates in segregation are given four hours a week of recreation exercise, although the Department of Corrections policies require five hours a week.

The cells at the Columbia Correctional Institution are wired with emergency alert buttons that prisoners could use to call for help in the event of an emergency, but those buttons are turned off. As a result, prisoners in need of help must shout or obtain help from other prisoners to get the attention of officers.

Turner has filed two inmate complaints regarding incidents that he believed involved racial discrimination. On the first occasion, he filed an inmate complaint against officers Katz, Krotker, Gray and one unknown officer for something that happened while Turner was using the computer in Ds-1. Plaintiffs' complaint in this case does not include allegations

about the nature this incident or the alleged discrimination. Defendant Ashworth investigated but never responded to plaintiffs' complaint.

On the second occasion, Turner was in the day room when officers Krazt, Krotker and Gray laughed at Turner and "stated that Turner smelled like shit." Turner filed an inmate complaint. On February 15, 2012, Ashworth sent Turner a reply, stating that Ashworth had reviewed Turner's information, concluded there was no evidence of staff misconduct and "referred" Turner to the department regulations regarding inmates who file false statements about prison staff. Ashworth never spoke to Turner about the incident.

OPINION

A. Motion for Class Certification

As an initial matter, in their complaint plaintiffs assert that they are filing this lawsuit on behalf of themselves and all prisoners who are or will be incarcerated at the Columbia Correctional Institution. I construe plaintiffs' assertions as a request for certification of this lawsuit as a class action. Before the court may certify a class action, four prerequisites must be met:

> (1) The class [must be] so numerous that joinder of all members is impracticable, (2) there [must be] questions of law or fact common to the class, (3) the claims or defenses of the representative parties [must be] typical of the claims or defenses of the class, and (4) the representative parties [must] fairly and adequately protect the interests of the class.

Fed. R. Civ. P. 23(a). Although plaintiffs may be able to satisfy the first requirements, they cannot proceed as class representatives because they fail the third and fourth requirements.

B. Eighth Amendment

The Eighth Amendment prohibits cruel and unusual punishment and applies to the states through the Fourteenth Amendment, . Robinson v. California, 370 U.S. 660 (1962). The Eighth Amendment imposes a duty on prison officials to maintain "humane conditions of confinement," but prison conditions may be harsh and uncomfortable without being inhumane. Farmer v. Brennan, 511 U.S. 825, 833-34, 847 (1994). To state a claim under the Eighth Amendment, plaintiffs must allege facts to suggest that (1) "a prison official's act or omission results in the denial of the minimal civilized measure of life's necessities," Rhodes v. Chapman, 452 U.S. 337, 347 (1981); and, (2) those officials were deliberately indifferent to conditions posing a threat to inmate health or safety, Farmer, 511 U.S. at 847, meaning that each defendant "received information from which the inference could be drawn that a substantial risk existed, and that the official actually drew the inference." Townsend v. Fuchs, 522 F.3d 765, 773 (7th Cir. 2008). It is not enough for plaintiffs "to show that the official acted negligently or that he or she should have known about the risk." Id.

Plaintiffs contend that defendants have violated and continue to violate plaintiffs' Eighth Amendment rights by maintaining inhumane prison conditions in Ds-1 and by creating overcrowding throughout the Columbia Correctional Institution, threatening inmate health and safety.

1. Segregation cells in DS-1 and DS-2

Plaintiff Turner's cell in DS-1 had bugs living in the concrete frame of his bed. Even

6

after he told defendants Mesiner, Douma, Morgan and Nickel about the insects, they did nothing about the insects for 37 days. These conditions may be unpleasant, but they are not objectively severe enough to violate the Eighth Amendment.

To determine whether unsanitary conditions are objectively severe, courts consider both the nature of the conditions and their duration. E.g., Dixon v. Godinez, 114 F.3d 640, 643 (7th Cir. 1997). No definitive test distinguishes harsh from inhumane conditions, but the Court of Appeals for the Seventh Circuit has found the following types of unsanitary conditions to be inhumane: sleeping on a moldy and wet mattress for 59 days, Townsend v. Fuchs, 522 F.3d 765, 773-74 (7th Cir. 2008); living for sixteen months in a cell that was infested with cockroaches and was sprayed only twice in 16 months, Antonelli v. Sheahan, 81 F.3d 1422, 1431 (7th Cir. 1996); having to live in "'filth, leaking and inadequate plumbing, roaches, rodents, the constant smell of human waste, poor lighting, inadequate heating, unfit water to drink, dirty and unclean bedding, without toilet paper, rusted out toilets, broken windows, [and] . . . drinking water contain[ing] small black worms which would eventually turn into small black flies,'" Jackson v. Duckworth, 955 F.2d 21, 22 (7th Cir. 1992).

In contrast, the court of appeals upheld a grant of summary judgment against a prisoner who often saw cockroaches and was bitten twice, but conceded that an exterminator visited his cell every month and a half and would respond to his complaints. Sain v. Wood, 512 F.3d 886, 894 (7th Cir. 2008). Similarly, the court upheld summary judgment against a plaintiff who lived for twenty-eight days in an "extremely dirty" and "roach infested" cell

7

but did not assert that he suffered physical harm or that the conditions were prison-wide, affecting more than one inmate.  Harris v. Fleming, 839 F.2d 1232, 1233-34 (7th Cir. 1988).

Although plaintiffs allege that all the beds frames in DS-1 were infested, they do not allege that they suffered any physical harm from the insects or that the insects in the bed frames posed any substantial risk of harm.  Moreover, they allege that the insects were in the bed frame, not the mattress itself, and Turner's inmate complaints (filed with his complaint in this case) refer only to insects among his personal items on the cell floor. Inmate Cpt., dkt. #1-4 at 13; Inmate Cpt., dkt #1-3, at 28.  Plaintiffs' allegations are more similar to the limited time period in Harris and the minimal threat in Sain than they are to living in a roach infested cell for 16 months as in Antonelli or sleeping on a wet and moldy mattress for 59 days in Townsend.  Accordingly, plaintiffs' allegations of unsanitary conditions do not rise to the level of inhumane conditions implicating the Eighth Amendment.

2. Exercise in DS-1 and DS-2

Plaintiffs allege that inmates in segregation are permitted only four hours of exercise outside their cells a week; the exercise cages lack an exercise bar; and the prison lacks indoor exercise space for inclement weather.  These allegations fail to state an Eighth Amendment claim.  "Lack of exercise may rise to a constitutional violation in extreme and prolonged situations where movement is denied to the point that the inmate's health is threatened."

8

Antonelli, 81 F.3d at 1432.  However, opportunities to exercise that are merely less than desirable do not implicate this constitutional right.  Compare Harris, 839 F.2d at 1236 (finding no violation where inmate was denied yard time for four weeks but he could move about in his segregation cell by doing push-ups, aerobics or jogging) with Delaney, 256 F.3d at 683-84 (finding inmate stated a constitutional violation after he was denied any exercise out of his cell during six-month stint in segregation).  Because plaintiffs have not alleged facts that would show they were denied a meaningful opportunity to exercise, this claim must be dismissed as well.

3. Emergency buttons

Plaintiffs' last complaint about the conditions at the Columbia Correctional Institution is that the emergency alert buttons in the prison cells are not operative.  Plaintiffs have not alleged that the lack of alert buttons poses a substantial risk to their safety or health danger personally (because of some special conditions they suffer) or that specific facilities or practices at the Columbia Correctional Institution make alert buttons necessary to protect any prisoner's safety.  Accordingly, even if the Eighth Amendment required alert buttons for certain inmates, plaintiffs have not stated a claim that the Columbia Correctional Institution violated their constitutional rights by failing to maintain emergency alert buttons in their cells. Farmer, 511 U.S. at 842.

9

4. Overcrowding and double celling

The practices of overcrowding and double celling are not unconstitutional unless they result in conditions that deny the inmates the "minimal civilized measure of life's necessities" or cause "unnecessary and wanton infliction of pain." Rhodes v. Chapman, 452 U.S. 337, 347-48 (1981). In Rhodes, the Supreme Court upheld the use of double celling in cells measuring 63 square feet when the practice "did not lead to deprivations of essential food, medical care or sanitation" or "increase violence among inmates or create other conditions intolerable for prison confinement." Rhodes, 452 U.S. at 348. In Smith, the Court of Appeals for the Seventh Circuit upheld the practice of spending 20 hours a day in double cells as small as 55 square feet, finding that the inmates still received adequate food and medical care and the sanitary conditions were reasonable. Smith v. Fairman, 690 F.2d 122, 124-26 (7th Cir. 1982).

However, overcrowding or double celling may violate the Eighth Amendment if it creates a health problem or if it is accompanied by other "unsafe and unsanitary conditions." French v. Owens, 777 F.2d 1250, 1253 (7th Cir. 1985). For example, in French, each inmate in a double cell had only 24 square feet (with the net amount half of that) and some inmates spent up to 20 to 23 hours a day in these cells. Id. at 1252. Some of the cells had such low ceilings that inmates on the top bunks could not sit up, but the cells were too small for a chair; as a result, after spending 23 hours each day with no way of sitting up, inmates developed back problems. Id.

Plaintiffs' allegations about prison-wide overcrowding and double celling are also insufficient to state a claim under the Eighth Amendment. They have pleaded little more than the bare fact of overcrowding and double celling. They have not included any other allegations about the nature of their cells or the time they are required to spend in the cells.

The complaint includes various allegations about the effects of overcrowding and double celling, but I must disregard these allegations because they are conclusory. To state a claim, plaintiffs need not plead "specific facts," Erickson v. Pardus, 551 U.S. 89, 93 (2007), but they must provide enough detail to "present a story that holds together." Swanson v. Citibank, N.A., 614 F.3d 400, 404 (7th Cir. 2010). A complaint must state a claim that is "plausible on its face," which requires plaintiffs to plead more than facts showing "a sheer possibility that a defendant has acted unlawfully." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009); Rhodes, 452 U.S. at 349 n.8 (to prevail at trial, plaintiffs had to show that their prison faced increased violence, not merely that "close confinement of double celling for long periods creates a dangerous potential for frustration, tension, and violence" in general).

Most of plaintiffs' allegations about the health and safety risks of overcrowding and double celling are theoretical and unspecified concerns. For instance, plaintiffs allege that overcrowding increases stress, diminishes inmate safety and leads to the "physical degeneration" of the prisoners, Cpt., dkt #1, at ¶¶ 64, 66; that double celling "increases the opportunity for predatory activities among prisoners and facilities the spread of disease . .

11

. due to the unsanitary conditions and the close physical proximity confined in their cells," id. at ¶ 80; and that security staff are inadequate in size and training to provide the needed protection in light of the overcrowding, id. at ¶ 100.  Plaintiffs have not alleged facts about how overcrowding at the Columbia Correctional Institution affects the spread of disease, or increases violence and unsanitary conditions at that institution specifically, how plaintiffs' were affected personally, if they were, or why the staff's numbers or training is inadequate.

The one fact that plaintiffs do allege that is specific to the Columbia Correctional Institution is that the prison does not screen prisoners for safety risks before placing them into double cells, with the result that a prisoner may have a cellmate with violent histories or tendencies.  Again, however, plaintiffs fail to allege any facts to suggest that they are at risk of harm from this practice personally or that this practice unreasonably increases the risk of danger to inmates, who are already confined with other dangerous individuals.

Under Fed. R. Civ. P. 8(a)(2), a complaint must include "a short and plain statement of the claim showing that the pleader is entitled to relief."  This means that "the complaint must describe the claim in sufficient detail to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests."  EEOC v. Concentra Health Services, Inc., 496 F.3d 773, 776 (7th Cir. 2007).  Because plaintiffs have alleged no facts about how overcrowding affects them personally or the Columbia Correctional Institution specifically, their complaint is essentially a challenge to double celling and overcrowding in general.  For that reason, this claim does not comply with Rule 8 and I must dismiss it without prejudice.

12

Plaintiffs may file an amended complaint in which they address the problems with their overcrowding and double celling claims. If plaintiffs choose to file an amended complaint, it should contain short and plain statements of fact that describe what happened to plaintiffs personally and how overcrowding affects the Columbia Correctional Institution in particular. They should also take care to identify specific actions taken by each individual defendant that they believe violated their rights.

### C. Racial Discrimination

As an initial matter, most of plaintiffs' allegations under the heading of "racial discrimination claim" concern the treatment of minority correctional officers. A plaintiff has standing to sue only for injuries that he has suffered personally, Laskowski v. Spellings, 546 F.3d 822, 825 (7th Cir. 2008), so plaintiffs cannot bring their racial discrimination claim on behalf of correctional officers.

I interpret the remainder of this claim as asserting that defendant Ashworth violated plaintiff Turner's rights under the equal protection clause. To state an equal protection claim, plaintiff Turner must allege facts showing that he is a member of a protected class and that he suffered a discriminatory effect, that is, that he was treated differently from similarly situated individuals in an unprotected class. Chavez v. Illinois State Police, 251 F.3d 612, 636 (7th Cir. 2001). A plaintiff must also show that the defendant acted with a discriminatory purpose. Billings v. Madison Metropolitan School District, 259 F.3d 807,

13

812 (7th Cir. 2001).

The incident involving Turner in the day room does not meet either element. The officers' statements that plaintiff smelled were rude, but the complaint contains no allegations to suggest that these officers or Ashworth was motivated by racial animus. The comments were not overtly racial and, even if the incident had implicit racial overtones, that would not be enough to show that plaintiff was treated differently because of his race. "The use of racially derogatory language, while unprofessional and deplorable, does not violate the Constitution. Standing alone, simple verbal harassment does not . . . deny a prisoner equal protection of the laws." DeWalt v. Carter, 224 F.3d 607, 612 (7th Cir. 2002). Because the officers' alleged comment does not provide the basis for a claim, Ashworth's alleged approval of the comment cannot either.

The allegations in the complaint about the incident that plaintiff Turner experienced while using the computer fail to meet the pleading standards of Fed. R. Civ. P. 8, because the complaint includes no details about the nature of incident, including what actions the officers took that he believes violated his rights. Accordingly, I will dismiss plaintiffs' claim for racial discrimination as well.

## ORDER

IT IS ORDERED that

1. Plaintiffs James Robert Turner and John Townsend's request to proceed in forma

pauperis is DENIED;

2. Plaintiffs' claims that defendants violated their right under the equal protection clause by engaging in racial discrimination and their rights under the Eighth Amendment by maintaining inhumane conditions in DS-1 and DS-2 are DISMISSED with prejudice for plaintiffs' failure to state a claim upon which relief may be granted under Fed. R. Civ. P. 12(b);

3. Plaintiffs' claim that defendants violated their rights under the Eighth Amendment by engaging in double-celling and overcrowding are DISMISSED without prejudice for plaintiffs' failure to provide notice of their claims under Fed. R. Civ. P. 8;

4. Plaintiffs may have until August 20, 2012 to file an amended complaint addressing the deficiencies in their overcrowding and double celling claims; if they file an amended complaint within that time, I will screen it in accordance with 28 U.S.C. § 1915A; if they do not, the case will be dismissed with prejudice and each plaintiff will be assessed a strike.

5. Plaintiffs' motion for appointment of counsel, dkt. #4, is DENIED without prejudice.

    Entered this 30th day of July, 2012.

                              BY THE COURT:
                              /s/
                              BARBARA B. CRABB
                              District Judge